# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**WILLIAM E JOHNSON,**

        **Plaintiff,**

      **v.**                          **Civil Action 2:18-cv-1240**

                                           **Magistrate Judge Jolson**

**THE KROGER COMPANY, et al.,**

        **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to File First Amended Complaint (Doc. 14). For the following reasons, the Motion is **GRANTED in part and DENIED in part**.

## I.  BACKGROUND

"This is a civil rights action alleging racial profiling in public accommodations." (Doc. 1, ¶ 1). Plaintiff is a 63-year-old African-American resident of Delaware, Ohio. (*Id.*, ¶ 2). According to the Complaint, he regularly shopped at his neighborhood Kroger at 801 N. Houk Road (the "North Houk Kroger") where Defendant Michael Simons was employed as a Senior Loss Prevention Specialist. (*Id.*, ¶¶ 3–4, 7). Defendant The Kroger Company ("Kroger") "was at all times the relevant owner and operator" of the North Houk Kroger and employed Defendant Simons. (*Id.*, ¶ 3).

On October 17, 2017, Plaintiff went to the North Houk Kroger to shop for groceries and small gifts for his grandchildren. (*Id.*, ¶ 13). Among other items, Plaintiff looked at several DVDs as potential gifts for two of his granddaughters. (*Id.*, ¶ 15). Plaintiff avers that he ultimately decided not to purchase those DVDs, set them down on a store shelf, and completed his grocery shopping. (*Id.*, ¶ 17).

After checking out at the register, Defendant Simons approached Plaintiff and accused him of shoplifting DVDs. (*Id.*, ¶¶ 18–20). Plaintiff denied the accusations and walked towards his car. (*Id.*, ¶¶19–20). Defendant Simons followed Plaintiff to his car, took a picture of his license plate, and stated that he was going to have to call law enforcement. (*Id.*, ¶¶ 21–22).

Defendant Simons followed through and contacted the City of Delaware Police Department. (*Id.*, ¶¶ 36–37). Police officers responded to the North Houk Kroger and met with Defendant Simons. (*Id.*, ¶ 37). He told the officers that Plaintiff had stolen a number of movies and ignored his request to return them. (*Id.*, ¶¶ 38–39). Plaintiff was subsequently arrested and charged with theft. (*Id.*, ¶¶ 40–44). As a result of his arrest, Plaintiff was prohibited from shopping at the North Houk Kroger. (*Id.*, ¶ 46). In March 2018, the charges against Plaintiff were dropped due to insufficient evidence. (*Id.*, ¶ 48).

On October 15, 2018, Plaintiff filed a four-count Complaint, alleging (1) intentional race discrimination in violation of 42 U.S.C. §§ 1981 and 1982; (2) racial discrimination in violation of the Ohio Civil Rights Act; (3) malicious prosecution; and (4) respondeat superior. (Doc. 1, ¶¶ 52–56). The Court entered a Scheduling Order (Doc. 11) setting the deadline for motions to amend for May 31, 2019. On May 5, 2019, Plaintiff filed his Motion to File First Amended Complaint (Doc. 14). His proposed First Amended Complaint is similar, if not identical, to the original Complaint, "except that it includes two additional stated legal claims at the end." (*Id.* at 2). Plaintiff brings additional claims for (1) spoliation of evidence and (2) direct liability for Defendant Kroger. (Doc. 14-1, ¶¶ 57–66). Plaintiff's Motion is ripe for resolution.

## II.     STANDARD OF REVIEW

Trial courts enjoy broad discretion in deciding motions for leave to amend. *See Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990). Because Plaintiff timely moved to

amend under the Court's scheduling order, (Doc. 11), the Court considers Plaintiff's Motion under Fed. R. Civ. P. 15(a)(2). This rule encompasses a liberal policy in favor of granting amendments and "reinforce[s] the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.'" *Inge v. Rock Finan. Corp.*, 388 F.3d 930, 936 (6th Cir. 2004) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986)). In interpreting this Rule, "[i]t should be emphasized that the case law in this Circuit manifests liberality in allowing amendments to a complaint." *Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018) (citation and internal quotation marks omitted).

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 640–41 (6th Cir. 2018) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## III.    DISCUSSION

Defendants contend that Plaintiff's Motion to Amend should be denied because the proposed new claims could not survive a motion to dismiss and are therefore futile. (*See generally* Doc. 20).

### A.  Spoliation of Evidence

Defendants offer several arguments to support their contention that Plaintiff's spoliation of evidence claim is futile. First, they assert that Plaintiff cannot satisfy the first three elements of his proposed spoliation claim because "there is no factual allegation stating exactly when Defendants allegedly 'destroyed evidence' to demonstrate it was done 'at a time when there was pending or probable litigation.'" (Doc. 20 at 3). Second, they argue that "there is absolutely no

factual allegation demonstrating Defendants destroyed any evidence." (*Id.*). Third, they contend that the "proposed First Amended Complaint contains no factual allegations supporting his conclusory allegation that the lack of surveillance video will disrupt his case or otherwise damage him." (*Id.*). The Court addresses each of these arguments in turn.

Under Ohio law, a claim for spoliation of evidence requires a plaintiff to show: "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." *Wilkey v. Hull*, 366 F. App'x 634, 637 (6th Cir. 2010) (quoting *Smith v. Howard Johnson Co.*, 615 N.E.2d 1037, 1038 (Ohio 1993)). "In a spoliation case, the term 'willful' reflects an intentional and wrongful commission of the act." *Stillwagon v. City of Delaware*, 274 F. Supp. 3d 714, 779 (S.D. Ohio 2017), *aff'd in part, appeal dismissed in part sub nom. Stillwagon v. City of Delaware, Ohio*, 747 F. App'x 361 (6th Cir. 2018) (citation and quotations omitted). "Acts that are willful include those committed with premeditation, malice, or a bad purpose." *Maynard v. Jackson Cty. Ohio*, 706 F. Supp. 2d 817, 829 (S.D. Ohio 2010) (citations omitted).

*Elements 1 and 2—pending or probable litigation of which the defendant had knowledge*: As alleged by Plaintiff, at the time of the destruction of the surveillance footage, Plaintiff was the subject of criminal litigation of which Defendants were well-aware.[1] According to Plaintiff, Defendant Simons called the police, provided them with a false statement regarding Plaintiff stealing DVDs from the North Houk Kroger, and corroborated that statement in writing despite

---

[1] At this stage of the proceedings, the Court assumes, without deciding, "that a spoliation claim can derive from destruction of evidence that occurs during a criminal proceeding." *Stillwagon*, 274 F. Supp. 3d at 914 (collecting cases).

knowledge of its falsity. (*See* Doc. 14-1, ¶¶ 36–44). These actions led to the arrest and prosecution of Plaintiff. (*See id.*, ¶ 44 ("Relying on the dishonest information from Defendant Simons, and only that information, the Delaware police arrested Mr. Johnson for the alleged theft.")). Plaintiff's proposed First Amended Complaint, therefore, contains sufficient factual allegations to allow the Court to infer that, at the time of the alleged spoliation: Plaintiff's criminal prosecution was pending or probable, and Defendants knew that the criminal case was pending or probable. *Accord Stillwagon*, 274 F. Supp. 3d at 914 ("Based on the allegations in his Complaint, the Court can plausibly infer that: (1) Stillwagon's criminal case was pending when the alleged spoliation occurred; (2) defendants knew that the criminal case was pending . . .").

*Element 3—willful destruction of evidence*: As alleged by Plaintiff, Defendants willfully destroyed the relevant surveillance footage in an effort to disrupt Plaintiff's case. According to Plaintiff, surveillance cameras inside the North Houk Kroger continuously recorded all persons and activities throughout the store. (Doc. 14-1, ¶ 58). On the day of the events in question, these cameras were operational in the areas in which Plaintiff shopped. (*Id.*). Defendant Simons allegedly:

> acknowledged to police that he had reviewed those recordings, and he told police that he was unable to locate video footage of Mr. Johnson "concealing DVDs in his clothing". However, Defendant Simons did not report to the police what the security footage did show Mr. Johnson doing while he moved throughout the store. When Defendant Simons later preserved and provided to the police a portion of the security recordings, it was only the last few moments of Mr. Johnson's presence in the store: approaching the checkout area, paying for his items at the register, and then an exterior camera view of Mr. Johnson outside going to his vehicle. Defendant Simons decided not to preserve, and thus caused the destruction of, all other in-store security footage of Mr. Johnson, his movements and activities.

(*Id.*, ¶ 59 (emphases omitted)); (*see also id.*, ¶ 43 ("Defendant Simons destroyed or permitted the destruction of store security footage which was evidence of Plaintiff's innocence.")). In other words, as alleged by Plaintiff, Defendant Simons reviewed the relevant security footage, deleted

the footage that exculpated Plaintiff, and preserved that footage which corroborated his allegedly false account of the events in question. These allegations allow the Court to infer willful destruction of evidence by Defendants that was designed to disrupt Plaintiff's case. *See Stillwagon v. City of Delaware*, 274 F. Supp. 3d 714, 779 (S.D. Ohio 2017), *aff'd in part, appeal dismissed in part sub nom. Stillwagon v. City of Delaware, Ohio*, 747 F. App'x 361 (6th Cir. 2018) ("In a spoliation case, the term 'willful' reflects an intentional and wrongful commission of the act." (citation and quotations omitted)).

*Elements 4 and 5—disruption of Plaintiff's case and damages*:  Plaintiff's proposed First Amended Complaint contains sufficient factual allegations to satisfy the final two elements of a spoliation claim as well.  Plaintiff alleges that Defendants destroyed surveillance footage that would corroborate that he did not steal DVDs from the North Houk Kroger, but rather that he was an innocent victim of racial profiling.  (*See* Doc. 14-1, ¶¶ 57–59).  Allegations that Defendants destroyed exculpatory evidence are sufficient to show the disruption of Plaintiff's case and damages.  *See Stillwagon*, 274 F. Supp. 3d at 913–14 (concluding that "the destruction of that evidence disrupted Stillwagon's criminal defense; and … Stillwagon suffered damages that were proximately caused by the destruction of that evidence" where defendants destroyed "valuable exculpatory and impeachment evidence").

In sum, the Court concludes that Plaintiff's proposed First Amended Complaint is not futile with respect to the proposed spoliation of evidence claim.

## B. Direct Liability

Defendants also argue that Plaintiff's proposed direct liability claim against Defendant Kroger is futile.  (Doc. 20 at 4–5).  According to Defendants, "[a]lthough the claim is simply stated 'direct liability,' it appears Plaintiff is asserting a claim against Kroger for failure to train and

supervise Defendant Simons." (*Id.* at 4). In their view, Plaintiff offers only conclusory statements in support of this purported failure to train and supervise claim. (*Id.* at 4–5).

To prevail on a claim for negligent training and supervision, Plaintiff "must establish: 1) the existence of an employment relationship; 2) the employee's incompetence; 3) the employer's actual or constructive knowledge of that incompetence; 4) the employee's act or omission that caused the plaintiff's injuries; and 5) the employer's negligence in hiring, retaining, training, or supervising the employee proximately caused the plaintiff's injuries." *Herndon v. Torres*, 249 F. Supp. 3d 878, 887 (N.D. Ohio 2017) (citing *Sygula v. Regency Hosp. of Cleveland East*, 64 N.E.3d 458, 471 (Ohio Ct. App. 2016)). "These elements correspond with the basic elements of negligence—duty, breach, proximate cause, and damages. By establishing the first three elements, a plaintiff proves that the employer had a duty to protect the plaintiff from or to control the acts of a third person." *Ball v. Stark*, 2013-Ohio-106, 2013 WL 209123, at *18 (Ohio Ct. App. Jan. 17, 2013).

The proposed First Amended Complaint does not contain sufficient factual allegations to meet this standard. Here, Plaintiff has alleged that Defendant Kroger failed to train its Asset Protection Unit employees, like Defendant Simons, "on racial profiling, stereotyping and sensitivity training." (Doc. 14-1, ¶ 64). Specifically, Plaintiff alleges that Defendant Simons worked for Defendant Kroger for ten years but was "never provided … with even one class, one training program or one training document related to racial discrimination or stereotyping." (*Id.*). And Plaintiff alleges that Defendant Kroger failed to supervise Defendant Simons in the performance of his duties, as demonstrated by the events resulting in Plaintiff's arrest:

> Neither during the time the charge was pending, nor after the charge was abandoned, did Defendant Simons' superior or any other Kroger official conduct any investigation of this groundless stop and accusation of an innocent customer. No one even asked Simons about it. There were no systems in place to look into

such situations. There was no one who questioned or corrected or challenged Simons' initial surveillance of Mr. Johnson as a "suspicious" customer. And this was not an exception or anomaly. There was a total absence of supervision, review, accountability or correction such as would identify and, if necessary, take steps to prevent, potentially discriminatory stops and biased, dishonest prosecutions.

(*Id.*, ¶ 66).

While these allegations, if true, are concerning, they do not allow the Court to infer that, before the events in question, Defendant Simons was incompetent and that Defendant Kroger had actual or constructive knowledge of Defendant Simons' incompetence. Indeed, nothing in the proposed First Amended Complaint suggests that Defendant Kroger was aware that Defendant Simons was predisposed to discriminate on the basis of race. Without such knowledge on the part of Defendant Kroger, Plaintiff's proposed negligent failure to supervise and train claim is futile. *Cf. Herndon*, 250 F. Supp. 3d at 997.

Plaintiff's arguments to the contrary are unpersuasive. First, he attempts to distinguish a negligent hiring and retention claim from the standard applied to his negligent failure to supervise and train claim. (*See* Doc. 22 at 18 (arguing "[t]here are several different ways an employer may be held directly liable under Ohio law," including "negligently or recklessly fail[ing] to train and supervise . . . on important topics critical to their job duties: race discrimination, racial profiling, stereotyping, sensitivity training, and unlawful prosecutions.")). But, as state and federal courts have made clear, the standards for those claims are the same. *See Herndon*, 250 F. Supp. 3d at 997 ("To prevail on his claims for negligent hiring, retention, training, and supervision, Herndon must establish [the same five elements]" (citing *Sygula*, 64 N.E.3d at 471)); *Sheldon v. Kettering Health Network*, 40 N.E.3d 661, 678 (Ohio Ct. App. 2015) ("The elements of a negligent supervision claim essentially are the same as those required to prove negligent hiring.… Likewise,

other courts have recognized that the elements of negligent training are also the same."). Put simply, to prove either claim, Plaintiff must satisfy the five elements described above.

Second, Plaintiff argues that the proposed First Amended Complaint "state[s] a plausible claim of negligence: duty, breach of duty, proximate cause and damages." (Doc. 22 at 19). But as Ohio's Tenth District Court of Appeals has recognized, the elements of a negligent training and supervision claim "correspond with the basic elements of negligence—duty, breach, proximate cause, and damages. By establishing the first three elements, a plaintiff proves that the employer had a duty to protect the plaintiff from or to control the acts of a third person." *Ball*, 2013 WL 209123, at *18. In other words, the failure to satisfy the five-element standard for negligent training and supervision means that a plaintiff fails to state a claim for negligence in this context. Plaintiff does not cite, and the Court has not been able to find, any law supporting Plaintiff's argument to the contrary. Consequently, Plaintiff's proposed First Amended Complaint is futile with respect to the proposed direct liability claim.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to File First Amended Complaint (Doc. 14) is **GRANTED in part and DENIED in part.** Plaintiff shall file an amended complaint consistent with this Opinion and Order by July 18, 2019.

IT IS SO ORDERED.


Date: July 11, 2019                                    /s/ Kimberly A. Jolson
                                                       KIMBERLY A. JOLSON
                                                       UNITED STATES MAGISTRATE JUDGE